## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.       CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>NINTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>ORANGE</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Debra Thomas</u>
 Plaintiff
            vs.
<u>US Corrections LLC, Prisoner Transportation Services Inc</u>
Defendant

**II.      AMOUNT OF CLAIM**
   Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>300,000</u>

**III.     TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability – commercial
  ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions
☐ Professional malpractice
  ☐ Malpractice – business
  ☐ Malpractice – medical

  ☐ Malpractice – other professional
☒ Other
  ☐ Antitrust/Trade Regulation
  ☐ Business Transaction
  ☐ Circuit Civil - Not Applicable
  ☐ Constitutional challenge-statute or ordinance
  ☐ Constitutional challenge-proposed amendment
  ☐ Corporate Trusts
  ☒ Discrimination-employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

☐ County Civil
  ☐ Small Claims up to $8,000
  ☐ Civil
  ☐ Replevins
  ☐ Evictions
  ☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**   **REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☒  Non-monetary declaratory or injunctive relief;
☒  Punitive

**V.**   **NUMBER OF CAUSES OF ACTION:**
(Specify)

8

**VI.**   **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐  Yes
☒  No

**VII.**   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒  No
☐  Yes – If "yes" list all related cases by name, case number and court:

**VIII.**   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒  Yes
☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ James P Tarquin
Attorney or party
FL Bar No.:  906190
(Bar number, if attorney)
James P Tarquin
(Type or print name)
Date:  03/09/2020

IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

DEBRA THOMAS,

        Plaintiff,

vs.                                                Case No.

U.S. CORRECTIONS, LLC and
PRISONER TRANSPORTATION
SERVICES, INC., f/k/a Prisoner
Transportation Services, LLC,

        Defendants.

_____/

## PLAINTIFF'S COMPLAINT
## AND DEMAND FOR JURY TRIAL

      Plaintiff, Debra Thomas (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby files this suit against Defendant, U.S. Corrections, LLC, and Defendant, Prisoner Transportation Services, Inc., f/k/a Prisoner Transportation Services, LLC, (collectively "Defendants"), and alleges:

### NATURE OF ACTION

      1.      This is an action to redress the deprivation of rights secured to Plaintiff by Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e *et seq.,* and the Florida Civil Rights Act (hereinafter "FCRA"), FLA. STAT. §§ 760.01 *et seq.*

### STATUTORY PREREQUISITES TO SUIT

      2.      Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to maintaining the claims asserted herein as required by Title VII and the FCRA. Further, Plaintiff has performed and fulfilled all conditions precedent to maintaining the claims asserted herein as required by Title VII and the FCRA. (*See* Exhibit A).

## GENERAL ALLEGATIONS

3.      This is an action for damages in excess of fifteen thousand (15,000) dollars, exclusive of interest and costs.

4.      The alleged acts giving rise to this action were committed in Orange County, Florida, within the jurisdiction of the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida.

5.      Plaintiff, who is female, is a citizen of Florida.

6.      In documents filed with the Florida Department of State, Division of Corporations, Defendant, U.S. Corrections, LLC (hereinafter "USC"), identifies itself as a North Carolina company, identifies 517 Hickory Hills Boulevard, Whites Creek, Tennessee 37189 as its principal address, identifies Joel Brasfield as its President, and identifies Prisoner Transportation Services, LLC as a member.  USC identifies the address of Joel Brasfield as 517 Hickory Hills Boulevard, Whites Creek, Tennessee 37189.  USC identifies the address of Prisoner Transportation Services, LLC as 517 Hickory Hills Boulevard, Whites Creek, Tennessee 37189.

7.      In documents filed the Tennessee Secretary of State, Defendant, Prisoner Transportation Services, Inc. (hereinafter "PTS") identifies itself as a Tennessee company and identifies 517 Hickory Hills Boulevard, Whites Creek, Tennessee 37189 as its principal address. In documents filed the Tennessee Secretary of State on December 9, 2019, PTS changed its name from Prisoner Transportation Services, LLC to Prisoner Transportation Services, Inc. Thus, PTS was formerly known as Prisoner Transportation Services, LLC.  On information and belief, Joel Brasfield is the President and General Counsel of PTS.

8.      At all times material hereto, USC was a person within the meaning of Title VII and the FCRA employing fifteen or more employees for each working day in each of twenty or

2

more calendar weeks in the current or preceding calendar year. As such, USC was an employer within the meaning of Title VII and the FCRA.

9.      At all times material hereto, PTS was a person within the meaning of Title VII and the FCRA employing fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. As such, PTS was an employer within the meaning of Title VII and the FCRA.

## COUNT I:  HOSTILE WORK ENVIRONMENT
## HARASSMENT AGAINST USC UNDER TITLE VII

10.      Plaintiff hereby restates the allegations contained in paragraphs two through nine as though stated fully and completely herein.

11.      This claim for hostile work environment harassment on the basis of sex is asserted against USC pursuant to Title VII.

12.      At all times material hereto, Plaintiff was an employee of USC for purposes of Title VII and the FCRA. As an employee of USC within the meaning of Title VII and the FCRA, Plaintiff was protected against discrimination on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

13.      At all times material hereto, USC was Plaintiff's employer for purposes of Title VII and the FCRA. As her employer within the meaning of Title VII and the FCRA, USC was prohibited from discriminating against Plaintiff on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

14.      Plaintiff's employment with USC began in August 2016 and ended when she was terminated on or about October 12, 2016. During her employment with USC, Plaintiff worked out of USC's office in Orange County, Florida.

15.      In documents filed with the Florida Department of State, Division of

3

Corporations, USC identifies itself as an active North Carolina company, identifies 517 Hickory Hills Boulevard, Whites Creek, Tennessee 37189 as its principal address, identifies Joel Brasfield as its President, and identifies Prisoner Transportation Services, LLC as a member.

16.     At all times material hereto, Charles Swaneopok (hereinafter "Swaneopok"), who is male, was an employee and/or agent of USC.

17.     At all times material hereto, an individual with the last name of Hamby (hereinafter "Hamby"), who is male, was an employee and/or agent of USC.

18.     During Plaintiff's employment with USC, Swaneopok and Hamby continuously subjected Plaintiff to unwelcome sexual advances, verbal conduct of a sexual nature, and physical conduct of a sexual nature.  The ongoing and persistent unwelcome sexual advances, verbal conduct of a sexual nature, and physical conduct of a sexual nature included, but was not limited to:  urinating in front of Plaintiff while she was in the driver's seat of a motor vehicle; walking around a hotel room provided by USC in a towel and exposing testicles and pubic hair to Plaintiff; sexual remarks, such as comments about oral sex, being all over her, whether she liked to be on top while having sex, her buttocks, she is pretty, she is sexy, and she is cute.  The hostile work environment discriminatory harassment inflicted against Plaintiff also included requiring Plaintiff to stay in the same hotel room as male employees.

19.     The sexually harassing behavior was unwelcome in that it was uninvited and undesired by Plaintiff.  Plaintiff indicated by her conduct that the harassment was unwelcome by refusing to submit to the sexual demands and sexual conduct.  Plaintiff further indicated by her conduct that the harassment was unwelcome by complaining to management about the behavior.

20.     The harassment of Plaintiff occurred because of her sex.  The harassing behavior targeted at Plaintiff was explicitly sexual and involved sexual conduct.  As such, the harassment constituted discrimination on the basis of Plaintiff's sex.

4

21.     The harassment was so severe and/or pervasive that it discriminatorily altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a work environment which Plaintiff perceived as hostile or abusive.   Plaintiff felt uncomfortable, embarrassed and intimidated at work.   Thus, the harassing behavior directed towards Plaintiff was offensive to her personally and directly affected her working environment.

22.     The harassment was so severe and/or pervasive that it discriminatorily altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a working environment which a reasonable person, considering all of the circumstances, would have found hostile or abusive.   The harassment was physically threatening and intimidating in that Plaintiff was subjected to exposure of male genitalia.   The harassment was pervasive and humiliating in the Plaintiff was repeatedly the target of explicit sexual conduct.   Further, the cumulative effect of the harassment unreasonably interfered with Plaintiff's work performance by making it more difficult to do her job.

23.     USC knew and/or should have known of the harassing behavior against Plaintiff. USC had actual knowledge because Plaintiff complained to management about the harassment. Further, under the totality of circumstances, the continuous harassment of Plaintiff was so pervasive as to provide USC with constructive knowledge of the harassment.   Despite having actual and/or constructive knowledge of the harassment against Plaintiff, USC unreasonably failed to take immediate and appropriate remedial action to stop the harassment and prevent such behavior from recurring against Plaintiff.   In allowing the harassment to continue despite its knowledge of the harassment, USC tolerated and condoned the harassment.   As such, USC is directly liable for the hostile work environment harassment because of its failure to take prompt and effective remedial action after receiving notice of the harassing behavior.

24.     As a proximate result of the aforementioned intentional discriminatory acts of

5

USC, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

25.     The aforementioned intentional discriminatory acts of USC give rise to a cause of action under Title VII.  In particular, Title VII forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions, or privileges of employment.

26.     The aforementioned intentional discriminatory acts of USC were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

27.     If Plaintiff prevails on her Title VII claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under Title VII were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under Title VII; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

## COUNT II:  HOSTILE WORK ENVIRONMENT
## HARASSMENT AGAINST USC UNDER FCRA

28.     Plaintiff hereby restates the allegations contained in paragraphs two through nine,

along with the allegations in paragraphs twelve through twenty-three, as though stated fully and completely herein.

29.   This claim for hostile work environment harassment on the basis of sex is asserted against USC pursuant to the FCRA.

30.   By and through acts alleged more specifically in Count I, USC intentionally discriminated against Plaintiff on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

31.   As a proximate result of the aforementioned intentional discriminatory acts of USC, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

32.   The aforementioned intentional discriminatory acts of USC give rise to a cause of action under the FCRA.  In particular, the FCRA forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions, or privileges of employment.

33.   The aforementioned intentional discriminatory acts of USC were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

34.   If Plaintiff prevails on her FCRA claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to FCRA.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under the FCRA were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for

7

reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under the FCRA; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

### COUNT III: RETALIATION AGAINST USC UNDER TITLE VII

35.     Plaintiff hereby restates the allegations contained in paragraphs two through nine, along with the allegations in paragraphs twelve through twenty-two, as though stated fully and completely herein.

36.     This claim for retaliation is asserted against USC pursuant to Title VII.

37.     Title VII and the FCRA prohibit employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity under Title VII and the FCRA.

38.     As an employee of USC, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected activity under Title VII and the FCRA. More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing any practice of USC made an unlawful employment practice by Title VII and the FCRA. Further, Plaintiff was protected against retaliation in employment decisions for opposing sexually harassing behavior in the workplace.

39.     Plaintiff engaged in statutorily protected activity by complaining to management about the sexually harassing behavior against her. Plaintiff also engaged in protected activity when she refused to submit to the sexual demands and sexual conduct. In opposing and resisting the harassing behavior, Plaintiff had a good faith, reasonable belief that he had been subjected and/or was being subjected to unlawful sexual harassment. As such, Plaintiff engaged in

8

statutorily protected activity within the meaning of Title VII and the FCRA.

40.     In retaliation for Plaintiff's statutorily protected activity within the meaning of Title VII and the FCRA, USC inflicted direct economic harm against Plaintiff by taking her off the work schedule and terminating Plaintiff's employment on or about October 12, 2016. Because they inflicted direct economic harm against Plaintiff, the actions of USC in taking Plaintiff off the work schedule and terminating her employment constitute an adverse employment action within the meaning of Title VII and the FCRA. Moreover, the action of USC in terminating Plaintiff's constitutes an adverse employment action within the meaning of the Title VII and the FCRA because it was an ultimate employment decision.

41.     USC was aware of Plaintiff's statutorily protected activity within the meaning of Title VII and the FCRA when it subjected her to adverse employment action. More specifically, Plaintiff was subjected to adverse employment action after she engaged in statutorily protected activity within the meaning of Title VII and the FCRA, including after Plaintiff engaged in statutorily protected activity within the meaning of Title VII and the FCRA in October 2016.

42.     USC subjected Plaintiff to adverse employment action because of her statutorily protected activity within the meaning of Title VII and the FCRA.

43.     In taking adverse employment action against Plaintiff because of her statutorily protected activity within the meaning of Title VII and the FCRA, USC intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

44.     As a proximate result of the aforementioned intentional discriminatory acts of USC, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

45.     The aforementioned intentional discriminatory acts of USC give rise to a cause of action under Title VII.  In particular, Title VII prohibits an employer from taking retaliatory adverse employment action against an employee who, just like Plaintiff did, engaged in statutorily protected activity within the meaning of Title VII by complaining to management about sex-based discriminatory harassment against him or her in the workplace.

46.     The aforementioned intentional discriminatory acts of USC were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

47.     If Plaintiff prevails on her Title VII claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under Title VII were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under Title VII; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

## COUNT IV:  RETALIATION AGAINST USC UNDER FCRA

48.     Plaintiff hereby restates the allegations contained in paragraphs two through nine, along with the allegations in paragraphs twelve through twenty-two and paragraphs thirty-seven through forty-three, as though stated fully and completely herein.

49.     This claim for retaliation is asserted against USC pursuant to the FCRA.

50.     By and through acts alleged more specifically in Count III, USC intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

51.     As a proximate result of the aforementioned intentional discriminatory acts of USC, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

52.     The aforementioned intentional discriminatory acts of USC give rise to a cause of action under Title VII.  In particular, the FCRA prohibits an employer from taking retaliatory adverse employment action against an employee who, just like Plaintiff did, engaged in statutorily protected activity within the meaning of the FCRA by complaining to management about discrimination against him or her in the workplace.

53.     The aforementioned intentional discriminatory acts of USC were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

54.     If Plaintiff prevails on her FCRA claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under the FCRA were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under the FCRA; an award of prejudgment and postjudgment

interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

## COUNT V:  HOSTILE WORK ENVIRONMENT
## HARASSMENT AGAINST DEFENDANTS UNDER TITLE VII

55.     Plaintiff hereby restates the allegations contained in paragraphs two through nine as though stated fully and completely herein.

56.     This claim for hostile work environment harassment on the basis of sex is asserted against Defendants pursuant to Title VII.  This claim and the allegations herein, as authorized by Federal Rule of Civil Procedure 8(d), are stated in the alternative to the claim against USC in Count I.

57.     In response to Plaintiff's charge of discrimination filed with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") and the Florida Commission on Human Relations, Joel Brasfield, who is identified as President, represented to the EEOC, in a document prepared on PTS letterhead, that USC "merged with" PTS in January 2017.   In documents filed in the case of *Jeffrey Emil Groover v. U.S. Corrections, LLC, Prisoner Transportation Services, LLC, and John Does 1-100,* Case No. 15-cv-61902, (S.D. Fla.), PTS represented that "an actual merger took place between PTS and USC."

58.     If USC merged with PTS and PTS is the surviving company of the merger, then PTS succeeds to the liabilities and obligations of USC and thus is responsible for all the liabilities and obligations of USC, including Plaintiff's claims against USC.

59.     Based on the representations of PTS and Joel Brasfield, USC, on information and belief, merged with PTS in January 2017 and PTS is, on information and belief, the surviving company of the merger.  Because PTS is, on information and belief, the surviving company of the merger with USC, PTS succeeds to the liabilities and obligations of USC and thus is

responsible for all the liabilities and obligations of USC, including Plaintiff's claims against USC.

60.     At all times material hereto, Plaintiff was an employee of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, for purposes of Title VII and the FCRA.  As an employee of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, within the meaning of Title VII and the FCRA, Plaintiff was protected against discrimination on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

61.     At all times material hereto, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, was Plaintiff's employer for purposes of Title VII and the FCRA.  As her employer within the meaning of Title VII and the FCRA, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, was prohibited from discriminating against Plaintiff on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

62.     Plaintiff's employment with USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, began in August 2016 and ended when she was terminated on or about October 12, 2016.  During her employment with USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff worked out of USC's office in Orange County, Florida.

63.     At all times material hereto, Charles Swaneopok (hereinafter "Swaneopok"), who is male, was an employee and/or agent of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger

64.     At all times material hereto, an individual with the last name of Hamby (hereinafter "Hamby"), who is male, was an employee and/or agent of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger.

65.     During Plaintiff's employment with USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Swaneopok and Hamby continuously subjected Plaintiff to unwelcome sexual advances, verbal conduct of a sexual nature, and physical conduct of a sexual nature.  The ongoing and persistent unwelcome sexual advances, verbal conduct of a sexual nature, and physical conduct of a sexual nature included, but was not limited to:  urinating in front of Plaintiff while she was in the driver's seat of a motor vehicle; walking around a hotel room provided by USC in a towel and exposing testicles and pubic hair to Plaintiff; sexual remarks, such as comments about oral sex, being all over her, whether she liked to be on top while having sex, her buttocks, she is pretty, she is sexy, and she is cute.  The hostile work environment discriminatory harassment inflicted against Plaintiff also included requiring Plaintiff to stay in the same hotel room as male employees.

66.     The sexually harassing behavior was unwelcome in that it was uninvited and undesired by Plaintiff.  Plaintiff indicated by her conduct that the harassment was unwelcome by refusing to submit to the sexual demands and sexual conduct.  Plaintiff further indicated by her conduct that the harassment was unwelcome by complaining to management about the behavior.

67.     The harassment of Plaintiff occurred because of her sex.  The harassing behavior targeted at Plaintiff was explicitly sexual and involved sexual conduct.  As such, the harassment constituted discrimination on the basis of Plaintiff's sex.

68.     The harassment was so severe and/or pervasive that it discriminatorily altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a work

environment which Plaintiff perceived as hostile or abusive. Plaintiff felt uncomfortable, embarrassed and intimidated at work. Thus, the harassing behavior directed towards Plaintiff was offensive to her personally and directly affected her working environment.

69. The harassment was so severe and/or pervasive that it discriminatorily altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a working environment which a reasonable person, considering all of the circumstances, would have found hostile or abusive. The harassment was physically threatening and intimidating in that Plaintiff was subjected to exposure of male genitalia. The harassment was pervasive and humiliating in the Plaintiff was repeatedly the target of explicit sexual conduct. Further, the cumulative effect of the harassment unreasonably interfered with Plaintiff's work performance by making it more difficult to do her job.

70. USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, knew and/or should have known of the harassing behavior against Plaintiff. USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, had actual knowledge because Plaintiff complained to management about the harassment. Further, under the totality of circumstances, the continuous harassment of Plaintiff was so pervasive as to provide USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, with constructive knowledge of the harassment. Despite having actual and/or constructive knowledge of the harassment against Plaintiff, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, unreasonably failed to take immediate and appropriate remedial action to stop the harassment and prevent such behavior from recurring against Plaintiff. In allowing the harassment to continue despite its knowledge of the harassment, USC, a constituent company that was merged

into PTS, which became USC's successor as the surviving entity of the merger, tolerated and condoned the harassment.   As such, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, is directly liable for the hostile work environment harassment because of its failure to take prompt and effective remedial action after receiving notice of the harassing behavior.

71.      As a proximate result of the aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

72.      The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, give rise to a cause of action under Title VII.   In particular, Title VII forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions, or privileges of employment.

73.      The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

74.      Because USC, on information and belief, merged with PTS in January 2017 and PTS is, on information and belief, the surviving company of the merger with USC, PTS succeeds to the liabilities and obligations of USC.   Thus, PTS is liable for USC's violation of Title VII with respect to Plaintiff because PTS became USC's successor as the surviving entity to the merger.

75.     If Plaintiff prevails on her Title VII claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under Title VII were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under Title VII; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

## COUNT VI:  HOSTILE WORK ENVIRONMENT HARASSMENT AGAINST DEFENDANTS UNDER FCRA

76.     Plaintiff hereby restates the allegations contained in paragraphs two through nine, along with the allegations in paragraphs fifty-seven through seventy, as though stated fully and completely herein.

77.     This claim for hostile work environment harassment on the basis of sex is asserted against Defendants pursuant to the FCRA.  This claim and the allegations herein, as authorized by Federal Rule of Civil Procedure 8(d), are stated in the alternative to the claim against USC in Count II.

78.     By and through acts alleged more specifically in Count V, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of

the merger, intentionally discriminated against Plaintiff on the basis of sex with respect to the compensation, terms, conditions, or privileges of her employment.

79.     As a proximate result of the aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

80.     The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, give rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions, or privileges of employment.

81.     The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

82.     Because USC, on information and belief, merged with PTS in January 2017 and PTS is, on information and belief, the surviving company of the merger with USC, PTS succeeds to the liabilities and obligations of USC. Thus, PTS is liable for USC's violation of the FCRA with respect to Plaintiff because PTS became USC's successor as the surviving entity to the merger.

83.     If Plaintiff prevails on her FCRA claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to FCRA.

WHEREFORE, Plaintiff prays this Court grant the following relief: an order declaring

that Plaintiff's rights under the FCRA were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under the FCRA; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

### COUNT VII:  RETALIATION AGAINST DEFENDANTS UNDER TITLE VII

84.     Plaintiff hereby restates the allegations contained in paragraphs two through nine, along with the allegations in paragraphs fifty-seven through sixty-nine, as though stated fully and completely herein.

85.     This claim for retaliation is asserted against Defendants pursuant to Title VII. This claim and the allegations herein, as authorized by Federal Rule of Civil Procedure 8(d), are stated in the alternative to the claim against USC in Count III.

86.     Title VII and the FCRA prohibit employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity under Title VII and the FCRA.

87.     As an employee of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected activity under Title VII and the FCRA.  More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing any practice of USC, a constituent company that was merged

into PTS, which became USC's successor as the surviving entity of the merger, made an unlawful employment practice by Title VII and the FCRA. Further, Plaintiff was protected against retaliation in employment decisions for opposing sexually harassing behavior in the workplace.

88. Plaintiff engaged in statutorily protected activity by complaining to management about the sexually harassing behavior against her. Plaintiff also engaged in protected activity when she refused to submit to the sexual demands and sexual conduct. In opposing and resisting the harassing behavior, Plaintiff had a good faith, reasonable belief that he had been subjected and/or was being subjected to unlawful sexual harassment. As such, Plaintiff engaged in statutorily protected activity within the meaning of Title VII and the FCRA.

89. In retaliation for Plaintiff's statutorily protected activity within the meaning of Title VII and the FCRA, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, inflicted direct economic harm against Plaintiff by taking her off the work schedule and terminating Plaintiff's employment on or about October 12, 2016. Because they inflicted direct economic harm against Plaintiff, the actions of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, in taking Plaintiff off the work schedule and terminating her employment constitute an adverse employment action within the meaning of Title VII and the FCRA. Moreover, the action of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, in terminating Plaintiff's constitutes an adverse employment action within the meaning of the Title VII and the FCRA because it was an ultimate employment decision.

90. USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, was aware of Plaintiff's statutorily protected

activity within the meaning of Title VII and the FCRA when it subjected her to adverse employment action. More specifically, Plaintiff was subjected to adverse employment action after she engaged in statutorily protected activity within the meaning of Title VII and the FCRA, including after Plaintiff engaged in statutorily protected activity within the meaning of Title VII and the FCRA in October 2016.

91.     USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, subjected Plaintiff to adverse employment action because of her statutorily protected activity within the meaning of Title VII and the FCRA.

92.     In taking adverse employment action against Plaintiff because of her statutorily protected activity within the meaning of Title VII and the FCRA, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

93.     As a proximate result of the aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

94.     The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, give rise to a cause of action under Title VII. In particular, Title VII prohibits an employer from taking retaliatory adverse employment action against an employee who, just like Plaintiff did, engaged in statutorily protected activity within the meaning of Title VII by complaining to management about sex-based discriminatory harassment against him or her in the

21

workplace.

95.     The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

96.     Because USC, on information and belief, merged with PTS in January 2017 and PTS is, on information and belief, the surviving company of the merger with USC, PTS succeeds to the liabilities and obligations of USC.  Thus, PTS is liable for USC's violation of Title VII with respect to Plaintiff because PTS became USC's successor as the surviving entity to the merger.

97.     If Plaintiff prevails on her Title VII claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under Title VII were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under Title VII; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

### COUNT VIII:  RETALIATION AGAINST DEFENDANTS UNDER FCRA

98.     Plaintiff hereby restates the allegations contained in paragraphs two through nine,

along with the allegations in paragraphs fifty-seven through sixty-nine and paragraphs eighty-six through ninety-two, as though stated fully and completely herein.

99. This claim for retaliation is asserted against Defendants pursuant to the FCRA. This claim and the allegations herein, as authorized by Federal Rule of Civil Procedure 8(d), are stated in the alternative to the claim against USC in Count IV.

100. By and through acts alleged more specifically in Count VII, USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

101. As a proximate result of the aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

102. The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, give rise to a cause of action under Title VII. In particular, the FCRA prohibits an employer from taking retaliatory adverse employment action against an employee who, just like Plaintiff did, engaged in statutorily protected activity within the meaning of the FCRA by complaining to management about discrimination against him or her in the workplace.

103. The aforementioned intentional discriminatory acts of USC, a constituent company that was merged into PTS, which became USC's successor as the surviving entity of the merger, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

104.    Because USC, on information and belief, merged with PTS in January 2017 and PTS is, on information and belief, the surviving company of the merger with USC, PTS succeeds to the liabilities and obligations of USC.  Thus, PTS is liable for USC's violation of the FCRA with respect to Plaintiff because PTS became USC's successor as the surviving entity to the merger.

105.    If Plaintiff prevails on her FCRA claim, resulting in vindication of her civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Court grant the following relief:  an order declaring that Plaintiff's rights under the FCRA were violated; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining any further unlawful employment practice under the FCRA; an award of prejudgment and postjudgment interest on the damages award; and for such other legal and equitable relief as the nature of Plaintiff's cause may warrant.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands pursuant to FLA. R. CIV. P. 1.430 a trial by jury on all issues so triable.

Dated:  March 6, 2020

Respectfully submitted,

/ s/ James Tarquin
James P. Tarquin
Florida Bar No. 906190
Mark Dillman
Florida Bar No. 0276250
JAMES P. TARQUIN, P.A.
1111 N.E. 25th Avenue, Suite 501
Ocala, Florida 34470
Telephone: (352) 401-7671
Facsimile: (352) 401-7673
Attorneys for Plaintiff
tarquinlawoffice@aol.com

**EXHIBIT A**

**DISMISSAL AND NOTICE OF RIGHTS**

| To: | Debra Thomas<br>14122 E. County Road 325<br>Cross Creek, FL 32640 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **511-2017-01213** | **Pablo Alfonso,**<br>**Federal Investigator** | **(305) 808-1744** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____          DEC 12 2019
Michael J. Farrell,                                          _____
District Director                                              *(Date Mailed)*

Enclosures(s)

cc:    **Joel Brasfield**
**President**
**PRISONER TRANSPORTATION SERVICES, LLC**
**F/K/A U.S. CORRECTIONS, LLC**
**P.O. Box 171078**
**Nashville, TN 37217**

IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

DEBRA THOMAS,

        Plaintiff,

vs.                                         Case No. 2020-CA-2680-O

U.S. CORRECTIONS, LLC and
PRISONER TRANSPORTATION
SERVICES, INC., f/k/a Prisoner
Transportation Services, LLC,

        Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint in this action on defendant:

**U.S. Corrections, LLC**
**517 Hickory Hills Boulevard**
**Whites Creek, Tennessee 37189**

Each defendant is required to serve written defenses to the complaint or petition on James P. Tarquin, P.A., plaintiff's attorney, whose address is 1111 N.E. 25th Avenue, Suite 501, Ocala, Florida 34470, within twenty (20) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on this _____  3/12/2020

                                   Tiffany Moore Russell
                                   Clerk of the Court

By: _____
       As Deputy Clerk

**Civil Division**
**425 N. Orange Avenue**
**Room 350**
**Orlando, Florida 32801**

IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

DEBRA THOMAS,

        Plaintiff,

vs.                                              Case No. 2020-CA-2680-O

U.S. CORRECTIONS, LLC and
PRISONER TRANSPORTATION
SERVICES, INC., f/k/a Prisoner
Transportation Services, LLC,

        Defendants.

_____/

## SUMMONS

        THE STATE OF FLORIDA

        To Each Sheriff of the State:

        YOU ARE COMMANDED to serve this summons and a copy of the complaint in this action on defendant:

        **Prisoner Transportation Services, Inc.,**
        **f/k/a Prisoner Transportation Services, LLC**
        **517 Hickory Hills Boulevard**
        **Whites Creek, Tennessee 37189**

        Each defendant is required to serve written defenses to the complaint or petition on James P. Tarquin, P.A., plaintiff's attorney, whose address is 1111 N.E. 25th Avenue, Suite 501, Ocala, Florida 34470, within twenty (20) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

        DATED on this _____    3/12/2020

                                         Tiffany Moore Russell
                                       Clerk of the Court

                                       By: _____
                                          As Deputy Clerk

                                        **Civil Division**
                                        **425 N. Orange Avenue**
                                        **Room 350**
                                        **Orlando, Florida 32801**